**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DONALD GADDY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-367-MTS** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is Defendant State Farm Fire and Casualty Company's Partial Motion to Dismiss First Amended Complaint and Combined Brief in Support. (Docket No. 19). After considering the parties' briefing and relevant caselaw, the Court hereby **GRANTS** Defendant State Farm's Partial Motion to Dismiss.

## Background and Procedural History

On June 12, 2025, Plaintiffs Donald and Patricia Gaddy ("Plaintiffs") commenced this action against Defendant State Farm Fire and Casualty Company ("Defendant") in Osage County District Court, alleging state law claims for breach of contract and bad faith. (Docket No. 2-2). Defendant removed the case to the United States District Court for the Northern District of Oklahoma on July 18, 2025. (Docket No. 2). On July 21, 2025, Defendant filed its first motion to dismiss (Docket No. 8), which this Court granted in part and denied in part on November 7, 2025. (Docket No. 17). Specifically, the Court granted the motion as to Plaintiffs' breach of contract claim, dismissing it without prejudice and permitting Plaintiffs to amend their Complaint. *Id.* at 15. However, the Court denied the motion as to Plaintiffs' claim for bad faith. *Id.*

On November 12, 2025, Plaintiffs filed their First Amended Complaint, again alleging claims against Defendant for breach of contract and bad faith.[1] (Docket No. 18). According to the Amended Complaint, Plaintiffs purchased a property insurance policy (the "Policy") from Defendant, policy number 36-CB-C162-2. *Id.* at 2. They allege that on or about June 17, 2023, the insured property suffered storm damage. *Id.* Plaintiffs reported a claim for loss under the Policy in March 2024 and were assigned claim number 36-63Z7-39S. *Id.* at 2-3. Defendant's adjuster inspected the property on or about April 1, 2024, at which time he determined wind and hail damage had occurred and assigned Plaintiffs a date of loss of June 17, 2023. *Id.* at 3. That same day, Defendant provided Plaintiffs with an estimate for repair and sent a loss below deductible letter. *Id.* On May 7, 2024, Defendant reassigned Plaintiffs' claim to a new adjuster, who sent a letter to Plaintiffs notifying them of the reassignment. *Id.*

According to Plaintiffs, their contractor obtained a shingle identification report on June 10, 2024, and informed Defendant that the shingles required to repair Plaintiffs' roof were discontinued by the manufacturer and mixing shingles was not allowed. *Id.* Defendant requested the contractor pull a shingle from the roof to send for identification, but Defendant waited until early December 2024 to collect the shingle. *Id.* at 3-4. However, on July 30, 2024, without having identified the shingle, Defendant sent Plaintiffs and their contractor a letter identifying a similar shingle to use for repairs. *Id.* at 3. Plaintiffs' contractor responded on August 6, 2024, that he could not perform the recommended repair because of the original shingle's being discontinued, the manufacturer's do-not-mix order, and certain building codes. *Id.* at 4. On August 27, 2024, Defendant informed Plaintiffs' contractor that the municipal code was not enforced at the loss

---

[1] Plaintiffs' Amended Complaint also contains allegations pertaining to their bad faith claim against Defendant. However, the Court does not include the allegations specific to Plaintiffs' bad faith claim herein, as Defendant does not seek dismissal of the claim.

location.  *Id.*  Plaintiffs then received a letter from Defendant on December 13, 2024, indicating "a similar, but not same, product" was available to repair the roof, and another conversation discussing Plaintiffs' claim allegedly occurred on December 16, 2024.  *Id.*

Plaintiffs allege that Defendant's "continued communication" about the repair shingle after June 17, 2024, "led [them] to assume that their insurance carrier was abiding by [its] duty of good faith and fair dealing and would soon realize the entirety of the roof required replacement and would issue payment pursuant to the Policy."  *Id.* at 4-5.  They contend that when Defendant "made it clear" in December 2024 that it would take no further action to adjust the claim, Plaintiffs began looking for an attorney.  *Id.* at 5.  Plaintiffs assert that Defendant's actions "lulled [them] into delaying the commencement of this suit to more than one year after the date of loss."  *Id.*  They further maintain that Defendant's handling of their claim was "unreasonable and resulted in Plaintiffs' being paid less than what they were owed under the terms and conditions of the insurance policy" and that "the investigation, evaluation, delay, and payment of Plaintiffs' claim were unreasonable and constitute breach of contract[.]"  *Id.* at 5.  Plaintiffs seek actual damages "in an amount not less than $63,685.90."  *Id.*

On November 26, 2025, Defendant filed its Partial Motion to Dismiss First Amended Complaint.  (Docket No. 19).  Plaintiffs filed their Response on December 10, 2025 (Docket No. 20), and Defendant filed its Reply on December 31, 2025. (Docket No. 21).  As such, the instant motion is now ripe for decision.

## **Legal Standard**

Defendant seeks dismissal of Plaintiffs' breach of contract claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United

States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atl.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Bell Atl.*, 550 U.S. at 556; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted). However, a court need not accept as true allegations that are conclusory in nature. *Id.* at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), citing *Bell Atl.*, 550 U.S. at 555.

**Discussion**

**A. Plaintiffs Did Not File Their Lawsuit Within a Year of the Loss**

The insurance policy at issue includes a "Suit Against Us" provision, which requires that legal actions commence within one year of the date of loss.[2] Such provision is consistent with the

---

[2] The pertinent portion of the provision provides: "No action will be brought against us unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage." (Docket Nos. 19 at 2-3; 24 at 29). The Court considers this portion of the insurance contract, attached as an exhibit to Defendant's Motion, because it is referenced in the Amended Complaint and Plaintiffs have not questioned its authenticity. *See J.H. v. Anthem Blue Cross Life & Health Ins. Co.*, 137 F.4th 1147, 1150 (10th Cir. 2025) ("In addition to the complaint, [a court] 'may consider documents attached to or

4

requirements of Oklahoma law. *See* Okla. Stat. tit. 36, § 3617 (stating that the time to bring "an action against any such insurer . . . [for] property . . . policies . . . shall not be limited to less than one (1) year from the date of occurrence of the event resulting in the loss."); *see also Wagnon v. State Farm Fire & Cas. Co.*, 951 P.2d 641, 644 (Okla. 1997) (applying § 3617 and finding property insurance "can be limited to a one-year period in which to file an action"). According to Defendant, Plaintiffs allege a date of loss of June 17, 2023, but did not file their lawsuit until June 12, 2025, which was well-outside the one-year period. (Docket No. 19 at 1, 5). Thus, Defendant maintains that Plaintiffs' breach of contract claim is time-barred under the Policy. *Id.*

The Tenth Circuit has analyzed such a contractual limitation as an affirmative defense, treating it as analogous to a statute of limitations defense. *See Frost v. ADT, LLC*, 947 F.3d 1261, 1266-67 (10th Cir. 2020) (analyzing a contractual limitations period as an affirmative defense). When analyzing a statute of limitations issue, "federal court[s] sitting in diversity apply state law." *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005); *see also Moneypenny v. Dawson*, 141 P.3d 549, 551 (Okla. 2006) ("The bar of the statute of limitations is an affirmative defense."). Such "an affirmative defense . . . is ordinarily raised and addressed in pleadings, rather than on motion." *Richter v. Nelson*, No. 4:20-cv-00167-CRK-CDL, 2024 WL 1337358, at *5 (N.D. Okla. Mar. 28, 2024). However, a court may address a limitations issue on a motion to dismiss "'when the dates given in the complaint make clear that the right sued upon has been extinguished[.]'" *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *see also Marshall v. State Farm Fire & Cas. Co.*, No. CIV-24-00780-JD, 2025 WL 817606,

---

referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"), quoting *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1286 n.3 (10th Cir. 2023).

at *2 (W.D. Okla. Mar. 13, 2025) (relying on *Aldrich* to address a limitations issue on a motion to dismiss). In such cases, "the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4 (citations omitted).

Here, Plaintiffs' Amended Complaint provides that the date of loss was "[o]n or about June 17, 2023." (Docket No. 18 at 2-3). From the face of the Amended Complaint, Plaintiffs failed to file this action within the Policy's one-year limitations period. *Id.* Thus, unless Plaintiffs alleged a factual basis for waiver or tolling of the one-year limitations period, their breach of contract claim is barred under the Policy's "Suit Against Us" provision.

**B. Plaintiffs Do Not Allege Sufficient Facts to Support Waiver or Equitable Tolling**

Plaintiffs argue the one-year limitations period does not apply to their breach of contract claim because Defendant "engaged in misleading conduct," which waived or tolled the period to bring suit. (Docket No. 20 at 1). Specifically, Plaintiffs assert they "have alleged a continuous course of conduct in which Defendant repeatedly led [them] and their contractor to believe that it would re-estimate the claim once it identified the shingle itself, thereby inducing Plaintiffs to believe that full replacement coverage remained under active consideration rather than formally denied." *Id.* at 2-3, citing Docket No. 18 at 3-5. According to Plaintiffs, any assurances and communications made after June 17, 2024, "are part and parcel of the same misleading conduct that began well before that date and continued to lull Plaintiffs into believing that litigation was unnecessary because the claim was still being adjusted[.]" *Id.* at 3.

Defendant contends that none of the additional facts alleged by Plaintiffs in the Amended Complaint prohibited Plaintiffs from filing their lawsuit within the one-year period, including allegations that Defendant reassigned their claim to a different adjuster on May 7, 2024, or the shingle report obtained by their contractor on June 10, 2024, of which Defendant was advised.

(Docket Nos. 19 at 8-9; 21 at 3-4). As to Plaintiffs' allegations of Defendant's conduct after the June 17, 2024, deadline, Defendant asserts that "[c]onduct occurring after the deadline [to file suit] cannot possibly . . . toll or waive a limitations period that has already expired[.]" (Docket No. 21 at 4).

As detailed by the Court in its prior Opinion and Order, Oklahoma law supports the waiver of contractual limitations provisions under certain circumstances. (Docket No. 17 at 10-11), citing *Prudential Fire Ins. Co. v. Trave-Taylor Co.*, 152 P.2d 273, 275 (Okla. 1944) (recognizing evidentiary support for the inference that an insurer waived the limitation provision when it "intended by its conduct to admit liability to the extent of the damage which had been done to the plaintiff's property by the fire involved" and "it did not deny liability within time to enable the plaintiff to institute the action within the limitation provision contained in the policy."); *Agric. Ins. Co. of Watertown v. Iglehart*, 386 P.2d 145, 146 (Okla. 1963) (finding waiver of the limitation provision when the insurer never paid the claim or denied liability, but "[t]here was merely a continuing disagreement between the parties as to the amount of plaintiff's claim."); *Okla. Farm Bureau Mut. Ins. Co. v. Lay*, 398 P.2d 506, 508 (Okla. 1965) (determining the waiver issue was properly submitted to a jury when the insurer told the insured it would settle the claim and requested a repair estimate, as such conduct "may have . . . lulled" the insured "into delaying the commencement of t[he] action more than one year after his loss[.]").

Additionally, this Court relied upon certain Oklahoma federal court opinions, which primarily focused "upon whether the insurer's conduct caused the insured to be unable to initiate a lawsuit within the limitations period." *Marshall*, 2025 WL 817606, at *3 ("Examples of conduct by the insurer that amount to waiver include situations where the insurer leads the insured to believe it will pay a claim, leading the insured not to file suit within the limitations period.")

(citation omitted); *see also Parrish v. Farmers Ins. Co., Inc.*, No. 21-CV-00280-GKF-SH, 2022 WL 3139750, at *7 (N.D. Okla. Aug. 5, 2022) ("[T]he court must focus on the *insurer's conduct* and whether it prohibited the insured from filing suit within the contractual limitation period.") (emphasis in original).

Here, Plaintiffs' allegations in the Amended Complaint establish that their property suffered storm damage on June 17, 2023, Plaintiffs reported their claim for loss in March 2024, and Defendant's adjuster inspected the property and provided Plaintiffs with a repair estimate and sent a loss below deductible letter on April 1, 2024. (Docket No. 18 at 3). The two months prior to the expiration of the one-year limitations period on June 17, 2024, provided Plaintiffs with ample time to bring their breach of contract claim against Defendant. *See Roemer v. State Farm Fire & Cas. Co.*, No. 06-CV-0663-CVE-PJC, 2007 WL 527863, at *2 (N.D. Okla. Feb. 14, 2007) (finding tolling of the statute of limitations was inappropriate when the plaintiff had "over three months to initiate a lawsuit before the statute of limitations expired").

Moreover, Plaintiffs allege that Defendant's assignment of a different adjuster to their claim on May 7, 2024, and its continued communications with them and their contractor regarding replacement shingles from June 10, 2024, through December 2024, "lulled [them] into delaying the commencement of the suit to more than one year after the date of loss." (Docket No. 18 at 3-5). However, Plaintiffs' allegations are not of "dilatory tactics" by Defendant, nor do they suggest that Defendant would re-estimate their claim or that Defendant was negotiating with Plaintiffs. The allegations, most of which occurred after June 17, 2024, merely demonstrate that Defendant responded to the communications and continued to rely on its initial assessment that a replacement shingle was available and a full roof replacement was unnecessary. *See Gamble v. State Farm Fire & Cas. Co.*, No. CIV-25-396-R, 2025 WL 2997887, at *6 (W.D. Okla. Oct. 24, 2025) (finding the

insurer did not use "dilatory tactics" or lead the plaintiffs "to believe it might fully replace their roof," as the insurer "calculated and issued payment for [the] [p]laintiffs' loss within mere weeks of [the] [p]laintiffs' claim" and there were "no allegations of any communications or actions by [the insurer] . . . which might warrant their belief that [the insurer] would reconsider their claim.").

Accordingly, the Court finds Plaintiffs' breach of contract claim against Defendant is time-barred under the Policy's one-year limitations provision. Plaintiffs' Amended Complaint established a date of loss of June 17, 2023, and Plaintiffs did not file their lawsuit until June 12, 2025. (Docket No. 18 at 2-3). Plaintiffs have failed to allege facts supporting waiver or equitable tolling of the one-year limitations period in the Amended Complaint. Plaintiffs' breach of contract claim should therefore be dismissed.

## Conclusion

For the reasons discussed herein, Defendant State Farm Fire and Casualty Company's Partial Motion to Dismiss First Amended Complaint and Combined Brief in Support (Docket No. 19) is hereby **GRANTED**.

**IT IS SO ORDERED** this 20th day of May, 2026.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT